[Cite as *State v. Lee*, 2026-Ohio-2597.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OHIO, | : | APPEAL NO. | C-250691 |
|  |  | TRIAL NO. | B-2404650 |
| Plaintiff-Appellee, | : |  |  |
| vs. | : |  |  |
| DERRICK LEE, | : | *JUDGMENT ENTRY* |  |
| Defendant-Appellant. | : |  |  |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/8/2026 per order of the court.**

**By:**_____
          **Administrative Judge**

[Cite as *State v. Lee*, 2026-Ohio-2597.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250691 |
| | | TRIAL NO. | B-2404650 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| DERRICK LEE, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 8, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela Glaser Law* and *Angela J. Glaser* for Defendant-Appellant.

**NESTOR, Judge.**

{¶1} After a bench trial, the trial court found Derrick Lee guilty of felonious assault. Lee shot a coworker twice in the leg but argued he did it in self-defense. Lee now appeals arguing he shot Richard Edwards in self-defense, or, alternatively, that he should have only been convicted of aggravated assault. Because Lee met verbal threats with a deadly weapon, he did not act in self-defense. Because Edwards did not seriously provoke Lee and Lee was not in a sudden fit of rage, the trial court did not err in finding Lee guilty of felonious assault. We affirm the trial court's judgment.

## I. Factual and Procedural History

{¶2} Lee and Edwards worked at the AAA carwash. The two knew each other growing up but were never friends. Four days before Lee shot Edwards, the two had a disagreement at work. Lee's police interview and Edwards's testimony offer slightly different versions of the events leading up to the shooting.

{¶3} Edwards testified that on Saturday while the two were working, Lee mentioned a rumor about Edwards. The unrecorded rumor greatly upset Edwards. Because he felt so disrespected, Edwards challenged Lee to fight. Specifically, Edwards said, "[W]e gotta hit for that." Lee responded, "I'll dirt nap you." Edwards understood that to mean Lee would kill him. When a break came at work, the two men moved off work property to fight. Edwards said he understood the fight would be "a man-to-man, one-on-one fight. [He did not] need everybody around or nothing, [we] get that out the way . . . and go back to [work.]"

{¶4} Lee's police interview offered a different version of events. Lee told officers that Edwards had been harassing him at work for some time. Lee worked at a different AAA carwash but was having issues with other employees so he asked to be moved to the location on Madison Road. When he moved to the AAA on Madison

Road, he recognized Edwards. Lee said he had always had problems with Edwards. Lee told officers that on the Saturday before Edwards was bothering Lee as usual. Lee told officers that out of nowhere, Edwards said the two needed to fight.

{¶5} Both Lee and Edwards said that they left work property for the fight. Neither was able to land a punch.

{¶6} Edwards described it as a "fake fight." Neither was being aggressive and while Edwards threw a punch, it did not land. The two men circled each other for a bit and then returned to work. Other employees came to talk to the men, and the fight was a wash. Lee told police officers he took off the next day, Sunday, to avoid Edwards.

{¶7} Both men worked again on Monday and Tuesday. They acknowledged each other but did not speak. Wednesday was different. Edwards testified that he was speaking to another employee before work when Lee approached. Edwards said Lee gave Edwards a look and Edwards did not like it. Edwards said, "We gotta hit." Lee, who was on the phone with someone, exclaimed, "You see what I gotta go through every day!" Lee walked back to his car for a moment. Lee reapproached Edwards with one hand behind his back.

{¶8} As Lee approached, Edwards said, "Man, whatever you got behind your back you might as well blow it." Edwards thought he was calling Lee's bluff on Lee having a gun. What happened next, in the words of Edwards, was Lee then "shot me, pow-pow."

{¶9} After shooting Edwards, Lee jumped in his car and quickly took off heading west on Madison Road. Other employees at the carwash called 911. Deputy Nicholas Arn was patrolling at the school across the street when the shooting came over his radio. Deputy Arn was the first to arrive at the scene.

{¶10} Deputy Arn testified at trial, and the State introduced Deputy Arn's body

worn camera footage at trial. On arrival, Deputy Arn applied a tourniquet to Edwards's leg. While applying the tourniquet, Deputy Arn asked Edwards if Edwards knew who shot him. Edwards responded that he did. He said it was Lee.

{¶11} On the second day of trial, Detective Zopfi testified. Detective Zopfi interviewed Lee. The State introduced the interview video at trial. In the video, Lee gave his version of events. He talked about how Edwards had always bothered him and that Edwards was trying to fight him for no reason. Lee said he never saw Edwards with a gun. Lee said that Edwards would constantly threaten to shoot him, and he thought Edwards had a gun. When asked whether he had ever seen Edwards with a gun, Lee said "I don't want to show my gun and make somebody feel threatened by me. If [Edwards] would have did [sic] that, I would have really felt threatened."

{¶12} Lee told officers he just wanted Edwards to "get away from [him]" and for Edwards to "leave [him] alone." Lee did not want to engage with Edwards, and he "was trying to ignore him." Lee "shot [Edwards]" but Lee aimed "down because [he] did not want to hurt [Edwards]."

{¶13} After Detective Zopfi testified, the State rested. Lee made a Crim.R. 29 motion. The court denied the motion. Lee did not put on any evidence and rested. Lee renewed his Crim.R. 29 motion. The court also denied that motion. In closing, defense counsel argued that Lee acted in self-defense or that Edwards seriously provoked Lee so the felonious assault charge should be reduced to aggravated assault.

{¶14} The court asked for briefing on the issue of serious provocation when the trial ended. After reviewing the attorney's briefs, the trial court found Lee guilty of felonious assault and sentenced him to the Ohio Department of Rehabilitation and Correction. Lee now appeals raising two assignments of error.

## II. Analysis

{¶15} In his first assignment of error, Lee argues his conviction is against the manifest weight of the evidence because he acted in self-defense. In his second assignment of error, Lee argues Edwards seriously provoked him so he should have been convicted of aggravated assault.

### A. First Assignment of Error

{¶16} When deciding whether a judgment entered by the trial court is against the manifest weight of evidence, the appellate court "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. The manifest weight of the evidence standard refers to whether there is a "'greater amount of credible evidence . . . to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed. 1990). The court must look to and weigh the "'evidence and all reasonable inferences, consider the credibility of witnesses and determine[] whether . . . the [fact finder] clearly lost its way and created such a manifest miscarriage of justice'" to justify reversal. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). This is an exceptional remedy that we reserve for cases where "'the evidence weighs heavily against the conviction.'" *State v. Cook*, 2024-Ohio-4771, ¶ 27 (1st Dist.), quoting *State v. Morris*, 2023-Ohio-4622, ¶ 26 (1st Dist.).

{¶17} Lee argues he acted in self-defense. To be successful, Lee would have to prove,

> '(1) that [he] was not at fault in creating the situation giving rise to the affray; (2) that [he] had a bona fide belief that he . . . was in imminent danger of death or great bodily harm and that his . . . only means of escape from

such danger was in the use of such force; and (3) that [he]

did not violate any duty to retreat or avoid the danger.'

*State v. Messenger*, 2022-Ohio-4562, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

### 1. *At Fault*

**{¶18}** Lee cannot claim he acted in self-defense because he is at fault for the affray. Lee brought a gun to something less than even a fist fight. Though Edwards said on Wednesday, "We gotta hit," these words did not start a fight. Edwards uttered the same words four days prior. Both men understood then that they would fight later, away from work. Edwards saying, "We gotta hit," again on Wednesday reasonably meant the same as it did on Saturday. Edwards made no other movements and was unarmed. Lee then walked away and returned to Edwards with a gun. Lee shot Edwards twice. Lee was at fault for the affray.

### 2. *Imminent Danger*

**{¶19}** Additionally, there is no persuasive evidence Lee believed he "was in imminent danger of death or great bodily harm." *See Messenger* at ¶ 14, quoting *Barnes* at 24. Lee said in his police interview he just wanted Edwards to stop bothering him. Lee did not shoot Edwards to protect himself, but rather Lee shot him to get Edwards to "leave [him] alone." Lee also said he would have felt really threatened if he had seen Edwards with a gun. This statement implies he was not fearful of "imminent danger of death or great bodily harm" because he did not feel "really threatened."

**{¶20}** While there is no persuasive evidence that Lee believed he was in danger of death or great bodily harm, Lee's use of force was also disproportionate. "'Implicit in the second element of self-defense is the requirement that the degree of force used

was warranted under the circumstances and proportionate to the perceived threat.'" *State v. Brunson*, 2025-Ohio-2057, ¶ 19 (1st Dist.), quoting *State v. Helmondollar*, 2024-Ohio-2077, ¶ 47 (5th Dist.). Lee escalated a verbal confrontation between employees when he introduced a deadly weapon. *See State v. Messenger*, 2021-Ohio-2044, ¶ 51 (10th Dist.) ("by brandishing his gun, [the defendant] escalated the conflict."); *State v. Ellis*, 2012-Ohio-3586, ¶ 16 (10th Dist.). Even if we considered Edwards to have started the affray and Lee to have a reasonable fear, Lee met verbal threats with a deadly weapon. The use of a firearm was disproportionate to any perceived threat. *See State v. Watson*, 2023-Ohio-3137, ¶ 89 (5th Dist.) (where the defendant's use of deadly force was unjustified in the face of verbal threats).

{¶21} The trial court did not err in finding that Lee was not acting in self-defense. Accordingly, we overrule appellant's first assignment of error.

## B. Second Assignment of Error

{¶22} Lee argues that Edwards provoked him, so he should only have been convicted of aggravated assault. "'The elements of aggravated assault are identical to the elements defining felonious assault, except for the additional mitigating element of serious provocation.'" *State v. Thompkins*, 2023-Ohio-2603, ¶ 19 (1st Dist.), quoting *State v. Smith*, 2006-Ohio-3720, ¶ 44 (1st Dist.). Serious provocation is a fact intensive issue that has an objective and a subjective component. *Id.* "To qualify as a serious provocation, the event must be intense enough to cause an ordinary person to lose control of their emotions, acting out of passion rather than reason." *Id.*, citing *Smith* at ¶ 46. "If the provocation was objectively reasonable, then the focus of the inquiry shifts to whether the defendant was in a sudden fit of rage or under a sudden passion when committing the crime." *Id.* at ¶ 20, citing *Smith* at ¶ 47. "This subjective inquiry requires the factfinder to consider evidence of the defendant's emotional and

mental state, as well as the conditions and circumstances surrounding the incident." *Id.*, citing *Smith* at ¶ 47.

{¶23} Objectively, Edwards's comments about wanting to fight later did not rise to the level of serious provocation because "'words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations.'" *State v. Mack*, 82 Ohio St.3d 198, 201 (1998), quoting *State v. Shane*, 63 Ohio St.3d 630 (1992), paragraph two of the syllabus. We cannot consider past threats Edwards made, including the Saturday "fight," because there was sufficient cooling off time. *Id.* ("past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off."), citing *State v. Huertas*, 51 Ohio St.3d 22, 31-32 (1990). While Edwards may have been an annoying coworker, his actions were not seriously provoking. *See State v. McGranahan*, 1995 Ohio App. LEXIS 2346, *6 (1st Dist. June 7, 1995) (holding there was serious provocation when "[the victim] grabbed [the defendant] by the testicles and was inflicting excruciating pain on him."); *State v. Rhymer*, 2021-Ohio-2908, ¶ 32 (1st Dist.) (holding there was serious provocation when the victim previously threatened the defendant, pushed the defendant, and tried to take the defendant's gun).

{¶24} Additionally, Lee's interview with the police contradicts any claim that he was in a subjective state of rage. *See State v. Sheppard*, 2001 Ohio App. LEXIS 4590, *12 (1st Dist. Oct. 12, 2001) (where the defendant's own testimony "did not support a finding that [he] was provoked or under the influence of sudden passion or a sudden fit of rage to [lower felonious assault to] aggravated assault."); *State v. Jackson*, 2010-Ohio-4312, ¶ 9 (1st Dist.) ("[the defendant's] own testimony revealed he had not been under the influence of sudden passion or in a sudden fit of rage. He denied being angry[.]"). Lee stated repeatedly in his police interview that he did not

want to fight Edwards. Lee just wanted Edwards to "get away from [him]" and for Edwards to "leave [him] alone." Lee did not want to engage with Edwards, he "was trying to ignore him." Lee did not "want to hurt [Edwards]." Lee "shot [Edwards]" but Lee aimed "down because [he] did not want to hurt [Edwards]." These are not the words and actions of someone "in a sudden fit of rage." *See Jackson* at ¶ 9.

{¶25} Because the evidence showed that Edwards's actions were not seriously provoking and that Lee was not in a sudden fit of rage, we overrule the second assignment of error.

### *III. Conclusion*

{¶26} Lee brought a gun to his place of employment and shot his coworker. We agree that he did not act in self-defense or in a sudden fit of rage. Accordingly, we overrule both assignments of error, and we affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **BOCK, J.,** concur.